Oral argument to be 10 minutes for Plaintiff, 5 minutes for Amicus, and 15 minutes for Defendant. Mr. Stokely for the Appellate. Good morning, your honor. My name is Matthew Stokely. I'm here today representing Appellate Jeff Smith. I'm reserving 3 minutes of time. And then I'm going 8 because we have Amicus here today from the EEOC. So today we're here to contest the grant of summary judgment that was made by the trial court in this age discrimination and retaliation case. This involves a police officer pursuit which was the main event that caused a sequence of other events to occur related to how Mr. Smith was treated and what happened in connection with his termination and then subsequent actions that we argue are retaliatory. Now this case focuses on the big issue is about whether or not there was direct evidence of discrimination, age discrimination made in connection with a statement made by the police chief regarding in a pre-disciplinary hearing which is held with the city and the union where the union before termination occurs, the union has an opportunity to meet with the city and discuss the circumstances of the termination. In that particular context, the police chief made the statement that he watched videos of younger officers that did not make the same mistakes that Mr. Smith made. And thereafter, in that context, right after that meeting, he was terminated. We have a pretty high standard for what counts as direct evidence of discrimination here. You pretty much have to have a statement that doesn't require inferences. And even just mentioning age doesn't mean there's no inference about what the actual motivation is to terminate someone. And I think here, even the arbitrator read the department's argument as being like people who are younger, have less experience, aren't making these mistakes, so it's even more egregious that a more experienced person is making these mistakes. So it kind of shows that different inferences can be drawn from these statements. I wonder if you wouldn't direct some of your time to your argument based on the McDonnell-Douglas burden shifting. And I would like to do that, and I will. So I think that statement that made at the pre-disciplinary hearing could also support evidence of pretext in connection with the McDonnell-Douglas burden shifting formula. And so, if I may, I will go and point to the arbitration decision, which was very critical in this case. The arbitrator painstakingly went through all of the evidence and facts, and those are cited in opposing counsel's briefs. Is it your position that all of the arbitrator's decision would be admissible evidence in this case? Well, I realize it's an opinion of an arbitrator, but what I would point out is there's various painstaking detail of facts that were… I know. I'm just trying to figure out what would be the proof that you would use if this case went forward. Could you use the arbitrator's decision, or what exactly about this? I think the arbitrator's decision is significant, but I'm just trying to figure out, practically speaking, what are you going to use as proof in addition to the statement that you already have mentioned? Well, what I think the significance of the arbitration decision is that it demonstrates viewing the facts in the most reasonable light to the plaintiff. When the court is looking at these facts and trying to determine, was this a legitimate reason for a termination, and the traditional standard… What if the district court had made the same conclusions here? The district court did not make those conclusions here, looking at the evidence. Do we give deference to the district court's decision? And if we don't, why would we give deference to the arbitrator's decision? Well, I'm not asking to give deference to the arbitrator's decision. Then what are you asking for if you're… I'm saying that… Opinions of an arbitrator. Because viewing the evidence of the light most favorable to the plaintiff, the McDonnell-Douglas burden-shifting formula is established because it shows that the central reason for the pursuit was the policy violation that the city claimed was the… Was there testimony presented to the arbitrator that was not presented at summary judgment through affidavits or whatnot to the district court? This was a summary judgment decision, wasn't it? Right. That's correct. And yes, there was a mountain of evidence at the arbitration proceeding, and not as much… So to your position, there is some evidence that the arbitrator saw that was not in front of the district court? Correct. But that doesn't change my conclusion that still viewing the evidence… Back on your argument. I'm just making sure I understand what your argument is. Right. And that evidence that he – they claimed that he violated the pursuit policy. And after going through all of the evidence, the arbitrator concluded that it was not even close, that he did not violate the pursuit policy. And in fact, the police chief basically admitted in the arbitration that he did have a justifiable reason for having the pursuit to begin with. And so therefore, it colored everything else. The arbitrator concluded… So essentially, the arbitrator's decision is kind of like an affidavit. It's pointing to potential evidence that could be presented before the district court in this case. That's correct. That's how I would view it. You had this long arbitration proceeding, you know, all this evidence and stuff. Am I correct that your client didn't argue that each discrimination was part of the motive for his termination through all of this? And that's why he wasn't really being fired for a pursuit policy violation, that he was really being fired for some sort of discrimination? Well, that was in the – the union contended that the termination was without just cause, and they prevailed on that. They did not make arguments about age discrimination, but plaintiff availed himself of filing an age discrimination charge at the same time. And so the decision – the charge had been already pending before the decision was issued. Right, but is there any evidence in the record – and I'm not saying that you have to have it, I'm just curious. I'm wanting to make sure I understand the record properly that, you know, after he was filed, before there was a filing of the EEOC complaint, which, again, was like after the whole arbitration proceeding, pending the decision, right? But after all the evidence and things, did your client ever mention age? Yes, but not in that arbitration proceeding. That was not – the union's – the union attorney did not advance age as a reason at the arbitration proceeding. He just dealt with the fact that he didn't violate the policy. And so I think that in that context, it's very useful to conclude that the state – the proffered reason offered by the employer was not a valid reason, because, you know, he didn't violate the policy. And so that's why, you know, we're here on the age discrimination. I see my time is out. I didn't get to talk about retaliation, but I guess I will come back in the next three minutes to do that. We have your briefs. Thank you. Good morning, Your Honors, and may it please the Court. Stephen Winkleman with the EEOC as amicus. The EEOC is participating in this case to address only the material adversity element of Smith's retaliation claim. Under the correct standard, the Burlington Northern Standard, a reasonable jury could find that the city's imposition of a fitness for duty exam was materially adverse because it well might dissuade a reasonable worker under the circumstances from making or supporting a charge of discrimination. In holding otherwise, the district court erred in three critical respects. First, the court conflated two analytically distinct elements, adversity and causation, by focusing on whether the city had legitimate reasons for imposing an exam and on whether Smith had identified similarly situated comparators. Both of those inquiries are relevant in assessing causation, that is, whether the plaintiff's protected activity is causally connected to an adverse action. But neither is relevant in assessing adversity, that is, whether the conduct could dissuade a reasonable worker from engaging in protected activity. Can I ask you, in this case, given the facts, and I know you're just on this material adversity prong, but given the facts of what happened in this case, do we have to make a determination that requiring someone to do a fitness for duty exam, like in and of itself, is materially adverse? I mean, here it strikes me that there's a lot more facts in the record, right? Not only did they require Mr. Smith to do this exam, but they didn't even, you know, well, they delayed in doing it, first of all, and then I believe there's some evidence in the record that even after the doctor clears him to go back, they still delay a bunch after that. And so I'm wondering if this case even presents kind of the pure question that, you know, you're talking about, like does a fitness for duty exam, in and of itself, meet the material adversity standard under Burlington Northern? That's correct, Your Honor, and to be clear, we're not advocating for a blanket or categorical rule that imposing a fitness for duty exam is always a materially adverse action. Burlington Northern calls for a circumstance-specific test and clarifies that what may be material under some circumstances won't necessarily be material under other circumstances. So all the court needs to hold in this case is that a reasonable jury could find that the city's imposition of the fitness for duty exam under the circumstances of this case was materially adverse. The district court's second critical error was improperly faulting Smith for failing to show that the fitness for duty exam affected his terms and conditions of employment, such as his pay, benefits, or rank. Burlington Northern forecloses that reasoning. There, the Supreme Court squarely held that unlike substantive discrimination claims, retaliation claims do not require a plaintiff to show that her employer's conduct affected a term or condition of employment, and that distinction is squarely rooted in the statutory text. While the substantive discrimination provisions of Title VII and the ADEA prohibit discrimination with respect to the terms, conditions, or privileges of employment, the retaliation provisions contain no such qualification. Finally, the district court relied on a slight misarticulation of the relevant standard, asking whether the employer's conduct would dissuade a reasonable worker when Burlington Northern asks whether the conduct might well or well might dissuade a reasonable worker. As we acknowledge, this court has itself used the would dissuade language. We believe that is largely inadvertent and, in any event, can't withstand the Supreme Court's articulation of the standard in Burlington Northern. Importantly, the city does not dispute that Burlington Northern supplies the correct standard, but instead appears to principally argue that Smith forfeited the appropriate standard by failing to argue that the district court had failed to apply or misapplied the standard in his opening brief. This court has rejected that argument, explaining that regardless of what the parties think the law is, courts have an independent obligation to get the law right. That means we must apply the correct governing law, even if the parties urge otherwise. And that's YV Sigworth 2024 West Law 4719649 at page 3. That principle applies with equal force here. Burlington Northern supplies the correct governing law, and this court must apply it. Unless the court has any further questions, we'd ask that it clarify that Mr. Smith had established a materially adverse action. Thank you. Thank you. We'll hear from the other side. Good morning, Your Honors. May it please the court, my name is Benjamin Reeb from the law firm Bricker-Gradin, here on behalf of Defendant Appali, City of Union. The district court's decision was sound in its entirety, and in addressing this case today, I'd like to reiterate two key points. First, Plaintiff Appellant Jeff Smith was required to prove but-for causation for both his age discrimination and retaliation claim, and I implore this court to not lose sight of that standard and Smith's failure to meet it in addressing the numerous subsidiary arguments contained in the party's briefs. Second, Smith waived key arguments underlying essential elements of his two claims for relief, and he cannot overcome that on appeal. The district court easily dismissed this case on numerous independent grounds, and the city respectfully requests that this court affirm that decision in full. So I'd like to ask about this arbitration agreement review as well. It doesn't seem like the district court really addressed it in its opinion. Is it not relevant to this case? I think its relevance deals with the context of the argument that opposing counsel brought it up in, which goes to the pretextual argument and attacking the facts underlying the reasons provided by the city, but the city provided numerous reasons for Smith's termination outside of just the pursuit. Smith himself admitted to 10-plus policy violations on that day, admitted that Redman, who he identified as a comparator for purposes of his prima facie case, did not make those same mistakes. The arbitrator went through all of those other policy violations as well, right? It was the pursuit policy but also said yes, you know, the seatbelt, the MBR, if I got that acronym right, you know, all of that stuff. Also went through his past disciplinary history and the police department's kind of how they do progressive discipline and, you know, found given all of that that this was quite extreme and unreasonable and to the arbitrator's words suggested that there was, it was so unreasonable that it suggested some sort of improper motivation, whether that's age is a different question, but certainly an improper motivation. Did look at all those other policy violations that you just used in answering Judge Bush. So I'll use this time to correct a misstatement by opposing counsel. The arbitrator did not find that there was not just cause for discipline. There were some questions. But did find that the termination was an unreasonable discipline. That's correct. It upheld a three-day suspension. The level of discipline there, that's correct. But it did find just cause for all those other policy violations and discipline in this case. I mean, it's hard to see how you would want to rely on the arbitrator's report, given that it throws, quite frankly, a lot of shade on the motives of the police department in picking such an extraordinary sanction here. I mean, I can read it here, but you're more than, you know, it is fair to note that the city's conclusions were so unreasonable and so outside what could be considered rational. You know, it's not clear why the city took the action it did here, but there are indications that other motivations exist that are outside of the scope of the arbitration. Right? I mean, I think that to the extent that it is relevant evidence, like you said, to pretext, I'm not sure it helps you. So as you know, the arbitrator's opinion is not binding on you as well as the district court. And so I'll use this time to turn to the circumstantial evidence and the violations of that day, which is in the record and was in the record before the district court. But you agree that the report itself, the arbitrator's report, is admissible evidence? I believe it can be considered. It's certainly not binding. And correcting another misstatement by opposing counsel, there was not any evidence, he has not provided any evidence that was before the arbitrator that is not before the district court. The district court examined all the same evidence. And in the record, there's books and books of arbitrator testimony during the arbitration hearings as to that. So the district court had the same evidence. Was the arbitration transcribed? Yes, it was. There's transcriptions from the plaintiff, Chief Blackwell, the city manager, at least two other officers, and all of that was before the district court. But there's nothing in the district court's opinion addressing any of that testimony, is there? Yes, there is. They cited evidence that we relied on in our motion for summary judgment citing that arbitrator testimony. So is it fair to say the district court has reached a different conclusion than what the arbitrator did after reviewing the evidence? I would say yes, but as Judge Bloomcutt brought up during opposing counsel's time, it wasn't in the context of an age discrimination case. Well, the question is whether or not there was justification to fire him. Wasn't that the issue? Yes, so that was the issue before the arbitrator. And that's part of the issue here, too, isn't it? I mean, it's an underlying issue, but what underlies everything is whether there's but-for causation, that age was the reason for his termination, and here that's not. I guess I'm struggling with we've got this arguably circumstantial evidence referencing of younger workers. If that were the only evidence in the case, I would be more inclined to be leaning your way, but what's got me going the other way is thinking about this arbitration. You've got to explain to me why this arbitration opinion doesn't at least create a jury issue on pretext. So I will point to a question regarding pretext. So the arbitration opinion challenges the facts underlying one reason, not even one reason, one policy violation among several reasons provided by the city for why it terminated Smith. This court has held recently in Deborah B. J.P. Morgan's Chase & Company, 749 Federal Appendix 331, that attacking the factual basis behind one legitimate non-discriminatory reason when there is admissions to the other legitimate reasons, which in this case is admissions to the numerous other policy violations. I mean, this gets back to my question earlier. Didn't the arbitrator look at all of the policy violations? The arbitrator was not just answering the question, did Mr. Smith violate the pursuit policy or not, and was that enough of a basis for his termination? The arbitrator also asked whether the overall punishment termination was reasonable given all of the other violations, which I mean there's like a bullet point list that the arbitrator goes through. The arbitrator goes through the background of his history of discipline and how progressive discipline works. So it's hard to have in the arbitrator's report as you're trying to do here. Before your time runs out, I'd like to ask you a question about the retaliation claim. And I'm curious if the city has put forward a legitimate justification, not just for asking for the fitness for duty exam, but for delaying and scheduling it, and then delaying after the doctor cleared Mr. Smith to go back. And if you can point me to where in the record and where in your briefs that justification is. So I'll first say that there was no delay here. There was exactly a month between the fitness for duty exam and his reinstatement to work. As you can imagine, it takes time for a doctor to put together a report. The doctor approved him on what day? That's not in the record. How about in the record at page ID 1366, where Blackwell says that the doctor approved him on July 24th? Are we not allowed to take that? Approved him on July 24th? And then he doesn't get to return to work until August 16th. So I'll point to cases from this court. This court has found that in opposite extremes, 16 months delay is evidence of improper motive there. Here we have a month time. He was returned to work exactly a month after receiving his fitness for duty exam, and he received all pay and benefits in the interim. There were no other extenuating circumstances such as missing out on pay. He received all back pay and benefits during that time. It's kind of conspicuous, right? You let him come back three days after there's a raise for everybody else, even though he's already been cleared by the doctor, right? You hold off until there's a raise for everybody else, other people get promoted. We can't look at that? I don't believe so. It has to be looked at in the context of what has been found to demonstrate such a motive in past cases. In one case, it was 16 months time between the fitness for duty exam and the return to work. The person missed out on pay during that time and benefits, had to use sick leave. None of that was present here. It was a month time, and in these decisions regarding return to work, there's factors that go into that in determining time frame and things such as that. There was no delay, and he was promptly returned after that. In looking at it in the grand scheme of things, in other cases that have found improper delay, you're talking about 13 months missing out on benefits and pay. He was returned to his prior position at a higher pay, which occurred because there was a new collective bargaining agreement put in place, and he received a higher pay upon his return. He did get benefit of the new collective bargaining agreement? He did, yes. I'll turn now to briefly address the EEOC's argument. You had asked Judge Blomkast whether you need to answer that question in this case, and the answer is a resounding no. Causation is dispositive in this case, and Smith failed to offer any evidence of causation, didn't even make an argument below, and he's waived from making any argument here on appeal. Well, what about circumstantial evidence in terms of causation and shifting of burdens under McDonnell Douglas? I don't understand your claim that there was no evidence of causation. For his retaliation claim? Yes. He was required to show that but for the filing of his EEOC charge, he would not have been required to attend a routine fitness for duty exam, and there's no argument below that trying to directly relate the two. The only argument below is in his counsel's assertion in his memorandum in opposition that,  there can be no dispute that the city's ordering of the examination was directly connected to the events which occurred one year prior. Without any evidence in the record to support that, the district court. Well, that may be so, but why can't we consider the entire course of dealing between the parties and the background information in trying to decide if there's some circumstantial, if not direct evidence that could go to retaliation here? The plaintiff has not offered any direct evidence going to the retaliation claim. It's been solely under circumstantial. I don't know what he's offered, but I'm just talking about our view of the record, our perspective in viewing the record as a whole of the course of dealing between the parties. So this court's case law is clear that but for causation is required for establishing that causation element, which is it's baked into the prima facie case for retaliation claims, and that but for causation is not here. There's not even an argument, and Smith cannot even advance one in his briefs because he waived it, but regardless of that, he didn't raise an argument regarding causation. He didn't even mention the word causation in his briefs submitted to this court. In such a glaring waiver of causation, under this court's clear guidance, the prima facie case fails. Did he say he was waiving causation? Because he didn't make any statement in one way or another about that, did he? I mean, there's a difference between waiver and forfeiture. Maybe your argument would be he forfeited the argument, not that he waived it. I think it's both. He didn't raise it below. He waived an ability to raise causation on appeal, and he forfeited it. Assuming he could even raise it, he forfeited it by not raising it in his briefs. So I think it touches on both of those principles here, and it is determinative of his retaliation claim under this court's clear precedent. I see that I've reached my time. I briefly conclude in conclusion that Smith failed to demonstrate any error in the sound reasoning of the district court's decision below, and the city respectfully requests that this court affirm that decision in full. Thank you, Your Honor. Thank you very much for your rebuttal.  Okay. I would like to address the issue of causation straight out, because this case, as I demonstrated in the brief, involves the particular circumstances of this case, and we went through painstaking detail to show what happened in the sequence of events after the city received the arbitration award that Mr. Smith was to be reinstated back to his employment. And what they did was they took a month to think about it, and then they decided to send Mr. Smith for a fitness for duty examination. And then in the meanwhile, all those other things occurred that we've listed in the brief about how two people got promoted, which Mr. Smith was the oldest person on the police force with the most seniority. He was deprived of the opportunity to even be considered for that kind of a promotion. They went and did that before they brought him back. And then they waited another month. After they got the report, they weren't happy with the initial fitness for duty report, and so they sent the videotape back to the doctor so he could look at it again and make another decision, which he turned right around and did. And so... Is it customary or required to require a fitness for duty examination before someone can return if they're not suffering from a disability or an injury or something like that? I don't know what's common or typical. I wouldn't say that. I would say that in this case, they did not even contact him to talk to him after not seeing him for a year. They don't know what his physical condition was, yet they only submitted him for a psychological fitness for duty exam based on a claim that he said on a videotape that there was stress involved in the situation in the pursuit that he was in. So, I mean, I don't know if the answer is a fitness for duty examination, a routine, or a normal thing. But I also just want to address real quick that the timeline, I mean, I want to go back to the Officer Redman, who's the comparator in the burden-shifting analysis under title, I mean, under age discrimination cases, and he was not disciplined because of his role in the... Is there evidence in the record, I may have missed it, about how old Officer Redman is? Yes. I mean, I know that Mr. Smith is the oldest, but we need to find, or there has to be a material touch-and-effect at least, that he's below 40 or significantly younger. There is evidence in the record that he's significantly younger. It was an answer that Mr. Smith made in an interrogatory, which is attached to his deposition testimony. I believe it's interrogatory number 11, and I think the exhibit is exhibit 9 to the Smith deposition. Thank you. So, and there is no debate that Mr. Smith is significantly older than the comparator. There's no evidence to the contrary, and they've never argued about the age. They just said that there's no, that the comparator is not, we haven't demonstrated enough to show that there's a real comparator. And so, but what I'd like to also say is that Officer Redman received no discipline for his role in the pursuit, even though he was there that day with Mr. Smith. And he, and the testimony of the Captain Allen is that he would have disciplined, but the police chief declined to discipline him at all. And so what we were left with were those minor violations, the seatbelt violation, but for Officer Redman it was a body camera violation, which is, you know, it's like evidence in a case. That seemed to be a pretty significant thing, but they decided not to discipline him at all. So I think, again, when you look at all the totality of these. Was there any kind of lawsuit brought against the department relating to this incident that he was being investigated about? No. No. In fact, the person driving the car, the pursuit, vehicle pursuit, was charged with a crime and was convicted of the crime. So, yes. So I see my time is out. I'd like to keep going, but unless you have any further questions, I thank you for your consideration. All right. Thank you very much. And the case is submitted.